Filed 11/1/21  P. v. Morgan CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B304291 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA116117) |
| v. | |
| JOHN WILLIE MORGAN, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rogelio Delgado, Judge.  Affirmed in part and remanded with directions.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Thirty-seven-year-old John Willie Morgan (appellant) met 15-year-old Mackenzie J. at a mall, and began grooming her to become a prostitute for him. He convinced her she was his girlfriend and she orally copulated him and had sexual intercourse with him. One night, he kidnapped her and forced her to work as a prostitute for him. He dissuaded her from reporting his criminal acts to authorities. Morgan was arrested in August 2017, tried in August 2019 and convicted of engaging in four sex acts with Mackenzie (Pen. Code,[1] §§ 288, subd. (c)(1), 288a, subd. (b)(2); 261.5, subd(d)), kidnapping her (§ 207, subd. (a)), trafficking her by force, fear, fraud or threat (§236.1, subd (c)(2)), and dissuading her from reporting a crime (§ 136.1, subd. (b)(1)). The jury found true the allegations that appellant had suffered two prior serious felony convictions (§ 667, subd. (a)(1) which were also strike convictions (§§ 667, subds. (b) through (i), 1170.12).

The trial court sentenced appellant to a term of 10 years eight months in prison plus a consecutive term of 90 years to life. The court also imposed various fines, fees, and assessments.

Appellant raises 10 claims of error, none of which relate to the conduct of the trial itself. Half of the claims arise from the hearing on appellant's *Marsden*[2] motion for substitute appointed counsel, made on July 31, 2019, the day originally set for jury selection to begin. He contends the trial court erred in failing to declare a doubt as to his competency during that hearing, based on his statements and behavior, together with his history of mental health issues. He contends the trial court failed to

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     *People v. Marsden* (1970) 2 Cal.3d 118.

provide him a fair hearing on his *Marsden* motion and also erred in failing to grant the motion on the basis of an irreconcilable conflict between him and his counsel.  Appellant further contends the trial court erred in failing to conduct a *Faretta*[3] hearing to determine if appellant could represent himself, based on statements appellant made during the hearing on the *Marsden* motion.  After appellant's *Marsden* motion was denied, appellant refused to leave the lockup at the courthouse to attend trial.  He contends the trial court failed to obtain a proper waiver of his right to be present at trial.

Appellant's remaining five claims of error relate to his sentence.  He contends section 654 bars punishment for both the kidnapping and trafficking convictions, and for both the trafficking and witness dissuasion convictions.  Respondent agrees the kidnapping sentence should have been stayed, but not the trafficking and witness dissuasion sentences.  Appellant further contends section 654 bars punishment for the lewd act conviction because it was based on either the act of oral copulation or sexual intercourse which supported his convictions for those specific acts.  Appellant relatedly contends that the section 667, subdivision (a)(1) enhancements to the witness dissuasion conviction must be stricken if the underlying punishment is stayed pursuant to section 654.  Finally, appellant contends the trial court violated his state and federal constitutional rights to due process by imposing fines, fees and assessments without making a determination of his ability to pay.

---

[3] *Faretta v. California* (1975) 422 U.S. 806, 819.

3

We agree the concurrent sentence for the kidnapping conviction and the one year eight month sentence for the lewd act conviction must be stayed pursuant to section 654. We affirm the judgment of conviction in all other respects.

## I.   Background – Pretrial Issues

On appeal, appellant relies on a brief paragraph in a pre-preliminary hearing report prepared in April 2018 to show his history of mental issues. This paragraph states in its entirety: "According to Justice Data Interface Controller (JDIC), the defendant is labelled 'mentally disturbed,' however, per trial court information system (TCIS), the defendant was referred to mental health competency on October 4, 2017. On February 4, 2018, the court found the defendant competent. [¶] The defendant was also admitted to Patton State Hospital 09/17/2002, as 'criminally insane.'"

Other entries in the appellate record are inconsistent with the probation report statement that appellant was found "criminally insane" on September 17, 2002. Evidence introduced at the trial on appellant's prior convictions shows that appellant was sent to Patton on that date pursuant to section "1370 PC – mentally incompetent." He was discharged on November 26, 2002. Criminal proceedings were then reinstated.

The report does not reflect a second competency hearing, which almost certainly occurred in connection with the November 2018 preliminary hearing. At that preliminary hearing, his first counsel, Roxana Santamaria, stated that "we will be proceeding 1368.1." Section 1368.1 specifies the procedures to be followed when a doubt arises as to a defendant's competency before an information has been filed in the matter. Following the hearing, appellant was bound over for trial.

4

Santamaria continued to represent appellant through at least December 26, 2018. Mitra Rose Donde appeared for appellant on January 22, 2019 and continued to represent him through trial. Based on Donde's later statement that there had been two competency proceedings before she was appointed to represent appellant, we infer that the second competency hearing involved the competency issue referenced at the preliminary hearing, that it was resolved in late 2018 before Donde's representation began, and that appellant was found competent. Donde elected to refer appellant to an expert for evaluation rather than ask the court to declare a doubt again; the expert found appellant competent.[4]

On July 31, 2019, the day set for trial, appellant made a *Marsden* motion for substitute appointed counsel. In open court, appellant stated that he did not want to "fucking deal with her" and did not want her "to fucking help me out at all." He added: "I told that bitch I was hearing fucking voices."

After the trial court cleared the courtroom, appellant made the following statements spontaneously: "I will fucking get my own fucking lawyer, be my own lawyer. I don't want her."; "I fucking hear voices all the time."; "I've been awake for seven fucking days."; and "I haven't slept in seven days."

The trial court then asked appellant if there was anything he wanted to tell the court that related to his request for a new

---

[4] Appellate counsel argues that Donde referred appellant to the expert before she even met him. We understand Donde's statement at the Marsden hearing differently. That is, we understand her phrase, "Prior to my meeting him" to refer back to the two competency hearings mentioned in her previous sentence. We see no significance to the order, however.

attorney. Appellant responded: "Because I fucking hear voices. I don't want her. She called me the N word. I don't fucking want her." The court asked if there was anything else, and appellant stated: "I'm not doing a damn self." The court attempted to clarify: "So [your] request is that you want a new attorney; correct?" Appellant replied: "Yeah." Then as the court began to speak, appellant said "I will do it myself." The court asked again: "Why is it that you want a new attorney?" Appellant replied: "Because I don't like her. She called me the N word. She looked at me wrong."

The court asked if there was anything else. Appellant replied, "I need my medication." The court again asked if there was anything else. Appellant replied: "Yeah, she threatens me. I don't like her. I know I do it myself. I know how to do it myself." The court reminded appellant: "This is a *Marsden* [motion] at this point in time. So let's deal with one thing at a time. [¶] Is there anything else you want to tell me about the representation of your counsel?" Appellant replied: "Yeah. She called me names. I don't like her." The court asked: "Is there anything else?" Appellant replied: "No."

The trial court then gave defense counsel an opportunity to respond. Counsel stated: "Mr. Morgan had previously gone to Department 95, I believe, twice." The trial court said, "Yes, I see that." Counsel clarified: "Prior to my meeting him." The court added: "I, instead of sending him to Department 95, I did have a 730 done and the doctor did find him to be competent." Appellant interjected: "I didn't even talk to him. He got mad and walked away. He told me to shut up." Defense counsel continued: "I've never called Mr. Morgan any names of any kind. I think Morgan—Mr. Morgan is upset about this trial."

6

The trial court asked appellant if he had anything else to add, and appellant replied: "No." The trial court then denied the *Marsden* motion, stating: "I find counsel has been representing Mr. Morgan properly and will continue to do so at this point in time." Appellant then stated: "I haven't had my medication in seven days." The court responded: "All right. If you need a medical order, give me a medical order, [counsel]. If one needs to be done, we'll take care of that. [¶] Anything else, [counsel]?" Defense counsel replied: "No, thank you."

After the prosecutor returned to the courtroom, the trial court stated that it would set the trial for "tomorrow morning" and would order "a panel of jurors."

The next day appellant refused to leave his cell at the county jail, was extracted and brought to the courthouse, and refused to leave the court lockup. The trial court and appellant's counsel met with appellant in the lockup to discuss his decision not to be present during trial.

II. **Discussion of Pretrial Issues**

A. *Appellant Has Not Provided an Adequate Record to Permit Us to Analyze Whether a Renewed Competency Hearing Was Warranted.*

Appellant contends the trial court committed prejudicial error in failing to declare a doubt as to his competency and to order a competency hearing based on evidence introduced during the *Marsden* hearing. Appellant has failed to provide an adequate record to permit us to review this claim. Put differently, appellant has not affirmatively demonstrated error.

"Trial of an incompetent defendant violates the due process clause of the Fourteenth Amendment to the United States Constitution (*Godinez v. Moran* (1993) 509 U.S. 389, 396

7

[113 S.Ct. 2680, 2685, 125 L.Ed.2d 321]) and article I, section 15 of the California Constitution. Those protections are implemented by statute in California. A criminal defendant is incompetent and may not be 'tried or adjudged to punishment' if 'as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' (§ 1367, subd. (a).) Section 1368 mandates a competency hearing if a doubt as to a criminal defendant's competence arises during trial. That may occur if counsel informs the court that he or she believes the defendant is incompetent (§ 1368, subd. (b)), or '[i]f during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant.' (§ 1368, subd. (a).) [¶] Whether on motion of the defendant or sua sponte, the trial court is required to suspend criminal proceedings and hold a hearing to determine competency whenever substantial evidence of incompetence is introduced." (*People v. Hayes* (1999) 21 Cal.4th 1211, 1281.)

" ' "[A]bsent a showing of 'incompetence' that is 'substantial' as a matter of law, the trial judge's decision not to order a competency hearing is entitled to great deference, because the trial court is in the best position to observe the defendant during trial." ' [Citation.] 'Whether to order a present sanity hearing is for the discretion of the trial judge, and only where a doubt as to sanity may be said to appear as a matter of law or where there is an abuse of discretion may the trial judge's determination be disturbed on appeal.' " (*People v. Ghobrial* (2018) 5 Cal.5th 250, 269.)

8

Where, as here, a competency hearing has already been held and the defendant found competent to stand trial, the trial court need not conduct another competency hearing absent a showing of "a substantial change of circumstances or new evidence casting a serious doubt on the validity of the prior finding." (*People v. Huggins* (2006) 38 Cal.4th 175, 220 (*Huggins*).)

Appellant points to his statements and behavior during the *Marsden* hearing and his history of competency issues as evidence of changed circumstances. He contends these circumstances would lead a reasonable judge to make a change of circumstances inquiry.

A prior "verdict of competency must be viewed as a baseline that, absent a preliminary showing of substantially changed circumstances, eliminate[s] the need to start the process anew." (*Huggins*, *supra*, 38 Cal.4th at p. 220.) For example, when the record showed that a defendant's noncooperation with counsel and psychiatrists began before the initial finding of his competence, further noncooperation after the competency finding did not constitute substantial evidence of a change in circumstances, even when the noncooperation took different forms. (*People v. Medina* (1995) 11 Cal.4th 694, 734 [defendant initially exhibited an unwillingness to cooperate by affirmative efforts to appear psychotic; after competency hearing, he exhibited noncooperation by mutism and withdrawal].)

The record on appeal contains no information at all about the prior determination of competency; contrary to appellant's claim it does not even show the date of the second determination. We are completely lacking in a baseline which would enable us to evaluate whether there was a showing of a change of

circumstances which would have necessitated a new competency hearing, or even just further inquiry into appellant's circumstances. For example, appellant asserts, correctly, that some defendants may be restored to competency with medication, and withdrawal of or change in that medication may render a person incompetent again, and that withdrawal of medication may constitute a change of circumstances warranting a new inquiry into a defendant's competency. The record on appeal does not show that appellant was taking medication which had restored him to competency, however. It contains no information about what, if any, medication appellant was taking.

In his reply brief, appellant asserts that his claim is based on the trial court's failure to inquire into his statements that he was not receiving his medication, not sleeping, and hearing voices, for the purpose of determining whether there had been a change in circumstances. This is, in effect, a claim that the trial court was unaware of the circumstances of appellant's prior competency hearings and so could not have determined whether appellant's statements and behavior at the *Marsden* hearing showed a change of circumstances without an inquiry at the hearing. As appellant acknowledges, the trial court had appellant's case file in front of him at the *Marsden* hearing, and the court itself stated that it saw that appellant had had two competency hearings. Thus, the trial court's decision not to declare a doubt sua sponte as to appellant's competency amounts to a decision that appellant's behavior was not substantial evidence of a change in circumstances. In order to show error in this decision, appellant would have to show evidence of the prior competency hearing(s). This evidence exists whether or not the

10

trial court conducted any inquiry at the *Marsden* hearing, but appellant has not included it in the record on appeal.

Providing the record on appeal is "a procedural and substantive requirement on the part of any party prosecuting an appeal or asserting a position on appeal. Judgments and orders are presumed correct, and the party attacking a judgment or order has the burden of affirmatively demonstrating error. [Citation.] The appellant has the burden of furnishing an appellate court with a record sufficient to consider the issues on appeal." (*People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534.)

Appellant has not met his burden of providing a record which affirmatively demonstrates error, and consequently he has not overcome the presumption of correctness with respect to the trial court's decision not to conduct a renewed inquiry. A court found appellant competent before the *Marsden* hearing, and the lack of a showing of changed circumstances means that we will treat him as such for purposes of this appeal.[5]

B.    *The Trial Court Properly Denied the Marsden Motion*

Appellant makes two sets of claims of error related to the *Marsden* motion, under two different headings. Under the first heading, he contends that the trial court did not conduct a full, fair and adequate hearing. Under the second heading, he contends that the trial court erred substantively in not finding an

_____

[5]    " 'An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper.'" (*People v. Danielson* (1992) 3 Cal.4th 691, 727 overruled on another ground by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

11

irreconcilable conflict between him and his attorney. We see no error.

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation—i.e., makes what is commonly called a *Marsden* motion [Citation]— the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. Substitution of counsel lies within the court's discretion. The court does not abuse its discretion in denying the motion unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." (*People v. Smith* (2003) 30 Cal.4th 581, 604.)

1. <u>The Hearing on the Motion was Adequate.</u>

Appellant contends the trial court erred in forcing him to comply with the requirements of a *Marsden* hearing rather than suspending the *Marsden* proceedings and inquiring into his competency and ability to participate in and comply with *Marsden* requirements. As we have explained in section II.A above, appellant had been found competent to stand trial prior to the *Marsden* hearing, and appellant has not demonstrated error in the trial court's lack of a renewed inquiry into his competence at that hearing. Appellant's claim that the *Marsden* hearing was procedurally flawed due to the lack of a renewed inquiry necessarily fails as well.

12

Appellant also contends the trial court erred in failing to inquire about (1) the need for an attorney to assist appellant in articulating his reasons; (2) the number of meetings Donde had with appellant and her investigation of the case; (3) how Donde felt about appellant claiming she called him the N word; and (4) what appellant meant when he said Donde looked at him "wrong."

It is well settled that " 'a *Marsden* hearing is not a full-blown adversarial proceeding, but an informal hearing in which the court ascertains the nature of the defendant's allegations regarding the defects in counsel's representation and decides whether the allegations have sufficient substance to warrant counsel's replacement.' " (*People v. Alfaro* (2007) 41 Cal.4th 1277, 1320.) A trial court should afford a defendant "ample opportunity to set forth [his or] her complaints regarding counsel's representation, and after hearing defendant's complaints [allow] counsel to respond." (*Ibid.*) A trial court is not required to do more. (*Ibid.*)

Here, the record shows that the trial court gave appellant ample opportunity to explain why he was unhappy with his counsel's representation. The trial court repeatedly asked appellant if he had anything he wished to add to earlier statements. The trial court then allowed Donde to respond. Nothing more was required.

At no point during the proceedings did appellant request appointment of a separate attorney to assist him with his motion. A trial court is not required to appoint separate counsel "to press a *Marsden* claim for a defendant." (*People v. Clark* (2011) 52 Cal.4th 856, 917.) Doing so without a request from the defendant would be particularly problematic due to the potential

13

to "damage the attorney-client relationship in those cases in which the trial court ultimately concludes that the motion should be denied." (*Ibid.*)

Assuming for the sake of argument that some statements by a defendant or counsel might require further inquiry from the court to clarify, that was not the case with the inquiries described by appellant. Those inquiries are attempts to expand appellant's and his counsel's answers, not clarify them. Nothing in appellant's statements suggested that he was unhappy with Donde because she failed to visit or communicate with him or conducted an inadequate investigation of his case. Looking at someone "wrong" is a common expression and does not imply that the look, as appellant suggests on appeal, reflects or expresses a racist attitude. Donde's feelings about appellant's claim that she called him the N word were demonstrated by her statement that "I think [he] is upset about this trial" and which strongly indicated she did not take the accusation personally or harbor any negative feelings toward appellant.[6]

The trial court provided appellant with a full, fair and adequate hearing.

---

[6] The trial court appears to have found Donde's denial credible. Appellant argues that even if he made up or imagined her use of the N word, it shows the depth of the irreconcilable conflict he had with Donde. "[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (*People v. Smith* (1993) 6 Cal.4th 684, 696.)

14

## 2. Appellant Did Not Show Grounds for Substituting Counsel.

Appellant contends the *Marsden* hearing established an irreconcilable conflict because Donde announced ready for trial when appellant "believed" he was not ready for trial because he was hearing voices and had not slept or had his medication in seven days. He claims it "appears [Donde] apparently believed" that appellant was competent to stand trial based on an expert's opinion while appellant "did not believe" that he was competent to stand trial because he did not believe the expert made a proper evaluation of him. He asserts Donde "would have been well with her discretion to declare that [he] was currently incompetent to stand trial and request a competency hearing."

A defendant is entitled to relief if "the appointed counsel is not providing adequate representation or . . . defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Smith*, *supra*, 30 Cal.4th at p. 604.) Although appellant has elected to characterize his *Marsden* claim as one involving irreconcilable conflict, it is more accurate and more helpful to view appellant's claim in the trial court as involving inadequate representation, particularly given that Donde never actually expressed a belief about defendant's competence. The trial court's ruling was so focused. The court denied the motion because it found "counsel has been representing [appellant] properly and will continue to do so." We agree this was the substance of appellant's claim: he believed he was not competent and Donde was not taking appropriate steps to assist him with his incompetency.

15

Donde responded to appellant's implied claim that she had not responded to his competency-related concerns (he needed medication, had not slept in seven days and was hearing voices), by describing the steps she had taken to address the issue of appellant's competency. She explained appellant had twice been found competent by Department 95 before she represented him, and she had chosen to have appellant further evaluated by an expert, who had found him competent.[7] This is, in effect, a statement that she did not have substantial evidence of a change in circumstances from the prior court determination that appellant was competent. Absent such evidence, she could do little to obtain a competency hearing.

To the extent appellant claims Donde should have exercised her discretion to "declare" he was incompetent even in the absence of substantial evidence, Donde was not ineffective in failing to do so. " 'Counsel's assertion of a belief in a client's incompetence is entitled to some weight. But unless the court itself has declared a doubt as to the defendant's competence, and has asked for counsel's opinion on the subject, counsel's assertions that his or her client is or may be incompetent does not, in the absence of substantial evidence to that effect, require the court to hold a competency hearing.' " (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 465.) Defense counsel "must present expert opinion from a qualified and informed mental health expert, stating under oath and with particularity that the defendant is incompetent, or counsel must make some other substantial showing of incompetence that supplements and

_____

[7]    If anything, Donde's decision to have an expert evaluate appellant suggests that she was concerned appellant might not be competent.

supports counsel's own opinion.  Only then does the trial court have a nondiscretionary obligation to suspend proceedings and hold a competency trial." (*Ibid*.)  Thus, "[c]ounsel is not ineffective for failing to raise the issue of competence where there may be some evidence raising a doubt, but that evidence is not substantial."  (See *People v. Mickel* (2016) 2 Cal.5th 181, 199--200.)

We recognize appellant makes a number of complaints about Donde's use of and reliance on an expert.  He suggests that the expert did not properly examine him and potentially was not qualified to do so.  He faults Donde for not providing more details of the expert's examination and for failing to offer a copy of the expert's report (assuming one was prepared).  It is appellant's burden to show error on appeal, and he has not provided any evidence related to the expert or the examination.

C.      *Any Request for Self-Representation Was Equivocal.*

Appellant contends he unequivocally asserted his right to self-representation during the *Marsden* hearing, and the trial court erred in failing to conduct a *Faretta* hearing and rule on his request for self-representation.  We do not agree.

1.      Relevant Law

"A defendant in a criminal case possesses two constitutional rights with respect to representation that are mutually exclusive.  A defendant has the right to be represented by counsel at all critical stages of a criminal prosecution.  [Citations.]  At the same time, the United States Supreme Court has held that because the Sixth Amendment grants to the accused personally the right to present a defense, a defendant possesses the right to represent himself or herself.  (*Faretta v.*

17

*California*, *supra*, 422 U.S. 806, 819 [95 S.Ct. 2525, 2533] (*Faretta*).)" (*People v. Marshall* (1997) 15 Cal.4th 1, 20 (*Marshall*).)

The "federal Constitution requires assiduous protection of the right to counsel. . . . Courts must indulge every reasonable inference against waiver of the right to counsel." (*Marshall*, *supra*, 15 Cal.4th at p. 20.) The high court has not extended the same kind of protection to the right of self-representation. (*Ibid.*)

Generally, a trial court must grant a defendant's request for self-representation if three conditions are met. The defendant must be mentally competent; he must make his request unequivocally; and he must make his request within a reasonable time before trial. (*People v. Welch* (1999) 20 Cal.4th 701, 729.)

"[I]n order to protect the fundamental constitutional right to counsel, one of the trial court's tasks when confronted with a motion for self-representation is to determine whether the defendant truly desires to represent himself or herself. [Citations.] The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*Marshall*, *supra*, 15 Cal.4th at p. 23.)

Requests made during or immediately after the denial of a *Marsden* motion are particularly likely to be deemed "equivocal,

insincere, or the transitory product of emotion." (*People v. Tena* (2007) 156 Cal.App.4th 598, 607 (*Tena*); see *People v. Scott* (2001) 91 Cal.App.4th 1197, 1205–1206 & fn. 3 (*Scott*) [defendant's statement following denial of Marsden motion that " 'I hereby move the court to let me go pro se' " was made out of frustration and was equivocal]; see also *People v. Danks* (2004) 32 Cal.4th 269, 295–297 [defendant's request to go pro per at the end of his *Marsden* hearing, viewed in context, was not a sincere *Faretta* request].)

Because the trial court made no findings of fact concerning appellant's statements about acting as his own lawyer, we review the record de novo to determine whether the request was unequivocal. (See *Marshall*, *supra*, 15 Cal.4th at p. 24 [noting that de novo review is common, but not deciding if it is appropriate when the trial court has made factual findings].)

> 2. <u>Appellant's Statements at the *Marsden* Hearing</u>

As set forth in the background section above, after the trial court cleared the courtroom for the *Marsden* motion, appellant spontaneously stated: "I will fucking get my own fucking lawyer, be my own lawyer. I don't want her." The court stated: "Sir, you've requested you wanted a new attorney. Is there anything you want to tell me?" Appellant replied that he was hearing voices, counsel called him the N word and he did not want her. The court asked if there was anything else and appellant replied: "I'm not doing a damn self." The court clarified: "So your request is that you want a new attorney; correct?" Appellant replied: "Yeah." As the court began to speak, appellant added: "I will do it myself." The court again asked if there was anything else. Appellant replied: "Yeah, she threatens me. I don't like her. I

19

know I do it myself. I know how to do it myself." The court reminded appellant: "This is a *Marsden* [motion] at this point in time. So let's deal with one thing at a time. [¶] Is there anything else you want to tell me about the representation of your counsel?"

Appellant's statements concerning self-representation were ambiguous, inconsistent and emotional. He both stated that he wanted to "be my own lawyer" and that he was "not doing a damn self." He also stated he would get his own lawyer. Thus, appellant's statements about representing himself were equivocal. Further, the statements, like all of appellant's during the hearing, were strongly emotional. In context, the statements are obviously aimed at demonstrating to the court how unhappy appellant was with appointed counsel. Appellant did not renew his motion for self-representation at his next opportunity to do so, which was the next day when the trial judge came to his cell, which further indicates that his request was equivocal. (See *Tena, supra,* 156 Cal.App.4th at p. 608 [in deciding whether request was equivocal, it is relevant to consider "whether appellant reasserted a request for self-representation when presented with the opportunity to do so."].)

Appellant appears to believe that once a trial court recognizes that a defendant is making a request for self-representation, the request can no longer be deemed equivocal. Not so.

As the California Supreme Court has made clear: The court "should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words." The defendant's conduct or other words may reflect ambivalence about self-representation. (*Marshall, supra,*

20

15 Cal.4th at p. 23.) For example, in *Scott*, the defendant made a motion for self-representation immediately after his *Marsden* motion, and the trial court gave Scott a waiver of rights form in response to his *Faretta* request. "[T]he court said: 'For the record, let me repeat it. Mr. Scott, are you sure you want to represent yourself?' Scott replied, 'Yes. I do, judge. I don't want [appointed defense counsel] to represent me.' Scott also said: '[I]f I can't get a [new] state appointed attorney, then I represent myself,' and, 'For the record, I don't want this attorney representing me. You the court is coercing me.' " The Court of Appeal found that Scott's subsequent comments suggest he made the *Faretta* motion only because he wanted to rid himself of appointed counsel and so his request was "not unequivocal." (*Scott*, *supra*, 91 Cal.App.4th at p. 1205.)

Relying on *People v. Dent* (2003) 30 Cal.4th 213, appellant contends a trial court has a duty to inquire further when a defendant makes an unequivocal request and to make a record of its findings or ruling. Appellant's reliance on *Dent* is misplaced. The trial court in *Dent* denied appellant's "arguably" equivocal request for self-representation on the erroneous ground that the case involved the death penalty. Our Supreme Court noted that if the record showed that the request was otherwise properly denied, the Court would uphold the denial. The Court did not reach the issue of whether the defendant's request was equivocal "because whether or not defendant's request was equivocal, the trial court's response was not only legally erroneous but also unequivocal, and foreclosed any realistic possibility defendant would perceive self-representation as an available option. Thus, even assuming defendant's request was equivocal, the trial

21

court's response effectively prevented defendant from making his invocation unequivocal." (*Id.* at p. 219.)

Here, the trial court's response suggested that it would be willing to consider a request for self-representation at another time. The court explained that it was currently deciding defendant's motion for substitute counsel and "So let's deal with one thing at a time." Thus, the reasoning of *Dent* is not helpful.

D. *Appellant Was Adequately Advised of And Knowingly and Voluntarily Waived His Right to be Present at Trial.*

Appellant contends his federal constitutional and state statutory rights to be personally present at trial were violated when the trial court failed to expressly advise him of that right and its attendant rights and to obtain the appropriate oral and written waivers from him.

1. Relevant Law

"A criminal defendant's right to be present at trial is protected under both the federal and state Constitutions. [Citations.]" (*People v. Gutierrez* (2003) 29 Cal.4th 1196, 1202 (*Gutierrez*).)

"[T]he right is not an absolute one. [Citation.] It may be expressly or impliedly waived. (*People v. Concepcion* (2008) 45 Cal.4th 77, 82 [84 Cal.Rptr.3d 418, 193 P.3d 1172] (*Concepcion*).) As relevant here, the high court has stated that 'where the offense is not capital and the accused is not in custody, *the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this* does not nullify what has been done or prevent the completion of the trial, but, on the contrary, *operates as a waiver of his right to be present and*

22

*leaves the court free to proceed* with the trial in like manner and with like effect as if he were present.' (*Diaz v. United States* (1912) 223 U.S. 442, 455 [56 L.Ed. 500, 32 S.Ct. 250], italics added.) Section 1043[, subdivision] (b)(2) has adopted this majority rule as state law. [Citation.] Section 1043[, subdivision] (b)(2) is similar to its federal counterpart, rule 43 of the Federal Rules of Criminal Procedure (18 U.S.C.), which, we note, the high court has found to be constitutional. [Citations.]" (*People v. Espinoza* (2016) 1 Cal.5th 61, 72.)

In *Taylor v. U.S.* (1973) 414 U.S. 17 [94 S.Ct. 194, 38 L.Ed.2d 174], the defendant contended his voluntary absence from trial could not be an effective waiver unless it was "demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him." (*Id.* at p. 19.) The Supreme Court responded: "It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial , . . . entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us . . . 'that a defendant who flees from a courtroom in the midst of a trial— where judge, jury, witnesses and lawyers are present and ready to continue—would not know that as a consequence the trial could continue in his absence.'" (*Id.* at p. 20.)

California law is to the same effect. "[U]nder section 1043, subdivision (b)(2), a trial court may continue a trial in a custodial defendant's absence after the trial has commenced in the defendant's presence—without first obtaining the defendant's written or oral waiver of the right to presence—if other evidence

indicates the defendant has chosen to be absent voluntarily. While a defendant's express waiver in front of the judge might be the surest way of ascertaining the defendant's choice, it is not the only way. A defendant's 'consent need not be explicit. It may be implicit and turn, at least in part, on the actions of the defendant.' [Citations.] In determining whether a custodial defendant who refuses to leave the lockup is 'voluntarily absent' (§ 1043, subd. (b)(2)), a trial court should take reasonable steps to ensure that being absent from trial is the defendant's choice." (*Gutierrez*, *supra*, 29 Cal.4th at p. 1206.) To be clear, a refusal to leave lockup supports a finding that the defendant voluntarily absented himself from trial. (*Ibid.*)

> ### 2. Appellant Was Advised of and Expressly and Impliedly Waived His Right to be Present at Trial, and Related Rights.

On August 1, 2019, the day set for jury selection to begin, the court stated: "The defendant was informed and advised we would be starting trial today at 10:00 in the morning. I ordered him back. This morning defendant refused to come out. He was a refusal. The court had to issue an extraction order to get him here this afternoon." Once in the courthouse lockup, defendant refused to dress and come out. The court asked the bailiff if defendant had said anything, and the bailiff replied: "He said I'm not starting this trial today."

The trial judge then went to the lockup with defense counsel Donde and a court reporter and spoke with appellant. The judge stated: "My understanding is that you don't wish to come out and participate in your trial?" Appellant replied: "No, I just want my medication." The judge stated: "Sir, I need to advise you it's really important that you participate in your trial.

24

I think it would be to your benefit. It's a disadvantage if you do not participate and help your defense in this trial. [¶] I strongly urge you that you should reconsider and come out and start this trial. We're going to start picking jurors today." Appellant responded: "I didn't say I wanted to go to trial." The judge explained: "Well, we're set for trial today, whether you said you didn't want to or not, but we're here today. . . . [¶] So I'm going to ask you again. Are you not going to participate in the trial?" The defendant replied: "No." The judge clarified: "No? Do you wish to stay here?" Appellant replied: "Yeah."

Defense counsel Donde then said to appellant: "[I]f you're there, you can help me with the witnesses. You know, and help me to defend you. If you're here, you won't be able to help me. You won't be able to see what's going on. [¶] Do you think you would be willing to get dressed and come to court, and kind of, like see what's going on so you can help yourself?" Appellant replied: "No."

These proceedings, taken as whole, were more than sufficient to advise appellant that he had the right to be present at trial and to confront the witnesses against him, and that the trial would proceed in his absence. Appellant was necessarily aware that if he did not come to court, he would not be able to testify on his own behalf. Appellant stated repeatedly that he did not want to come to court. This is a sufficient waiver of his rights.

Although not determinative of our decision, we note that the trial court ordered appellant to be brought to the courthouse every day during trial in case he changed his mind about being present and Donde was in communication with appellant in the lockup throughout trial. Although appellant discussed the trial

proceedings with Donde, he did not change his mind about being present. Near the end of trial, appellant came to the courtroom during a recess so that the court could advise him of his right to have a jury trial on the prior conviction allegations and to be present during that trial. Appellant requested a jury trial on the priors but stated that he did not want to be present for that trial. Appellant did return to court for post-trial proceedings.

Appellant nevertheless contends the court's advisement was inadequate because the trial court did not advise him in the words of the sample waiver form set forth in section 977, subdivision (b)(2) that he had the right "to be confronted by and cross-examine all witnesses" and to ask appellant, in the words of the sample waiver form if he "agree[d] that his or her interest is represented at all times by the presence of his or her attorney the same as if the defendant were personally present in court." Subdivision (b)(2) provides only that the waiver shall be "substantially" in the form provided. Donde explained to appellant that he would be able to assist her with the witnesses if he came to court, which adequately conveyed his rights related to the witnesses against him. Appellant clearly understood that Donde would represent his interests in his absence from the courtroom. This was sufficient.

Appellant also complains that the court did not obtain a written wavier from him, as specified in section 1043, subdivision (b)(2). As the California Supreme Court has made clear, an express written waiver under section 1043, subdivision (b)(2) is not required when a custodial defendant is voluntarily absent. "A defendant's 'consent need not be explicit. It may be implicit and turn, at least in part, on the actions of the defendant.' [Citations.] In determining whether a custodial defendant who

26

refuses to leave the lockup is "voluntarily absent" (§ 1043, subd. (b)(2)), a trial court should take reasonable steps to ensure that being absent from trial is the defendant's choice." (*Gutierrez*, *supra*, 29 Cal.4th at p. 1206.)

As set forth above, the trial court took reasonable steps to ensure that absence from trial was appellant's choice. The judge went to lockup to speak with appellant at the beginning of trial, and then ordered him brought to the courthouse lockup every day during trial in case he changed his mind. The court personally met with appellant near the end of trial to discuss how he wanted the priors adjudicated.

Appellant contends, in effect, that part and parcel of determining whether his absence from trial was voluntary was inquiring if appellant understood that being present for trial would not affect his appeal of the denial of his *Marsden* motion. Appellant contends he also should have been asked if he was absenting himself as a way of furthering his right of self-representation. There is nothing in the record to suggest that either concern was appellant's motivation. (See *Concepcion*, *supra*, 45 Cal.4th at p. 84 [we review a claim that defendant's absence was not voluntary for substantial evidence].) The record shows that appellant was angry that his *Marsden* motion was denied, but there is no reason to believe that he immediately began to think that absenting himself from trial was necessary to preserve his appellate rights. The trial court is not required to divine a defendant's motivation for absenting himself from trial after advising a defendant of the perils of doing so and getting only intransigence in response.

## III. Factual Background for Sentencing

On August 25, 2017, Mackenzie left home with appellant, in the belief that they were going to a party in Apple Valley. At one point, Mackenzie noticed that appellant was not driving toward Apple Valley; he was driving toward Pomona. She began texting on her phone. Appellant took the phone from her and told her "If I was snitching on him, he'd cut my head off and send it to my mom." At some point during the drive, appellant mentioned that he had a gun. Mackenzie felt "scared." During the drive, appellant also told Mackenzie she needed to make him money. Mackenzie understood this statement to mean that she would sell her body.

In Pomona, Mackenzie walked the street and engaged in prostitution because she was afraid appellant would hurt her. At some later point, while Mackenzie was in the car with appellant, police cars pulled up behind them. Appellant instructed Mackenzie to tell police she was his cousin. She complied because she was afraid of him. She was afraid to "snitch" on him. When the prosecutor asked why Mackenzie was afraid if the police were there, Mackenzie replied: "He said his people can come after me." The prosecutor asked: "So when [appellant] told you his people will come after you if you snitched on him, did you believe him?" Mackenzie replied she did, and she was scared.

## IV. Discussion of Sentencing Claims

### A. *Section 654*

Appellant contends the sentences on count 2 (lewd act), count 6 (kidnapping), and count 9 (witness dissuasion) must be stayed pursuant to section 654.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law

shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).) If a defendant has a separate objective for each crime he committed, section 654 does not apply, even if there was an indivisible course of conduct. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Whether section 654 applies to a conviction is a question of fact for the trial court, and the court's findings will be upheld if supported by substantial evidence. (*People v. Atencio* (2012) 208 Cal.App.4th 1239, 1242–1243.) If, however, the facts are undisputed, the application of section 654 raises a question of law that is reviewed de novo. (*Corpening*, *supra,* 2 Cal.5th at pp. 311–312.)

1.  The Sentence on Count 6 (Kidnapping) Must Be Stayed.

Appellant contends his concurrent sentence on count 6 (kidnapping) must be stayed pursuant to section 654. He

29

contends the kidnapping arose out of the same set of facts and was committed on the same occasion as the child trafficking charged in count 7, and the purpose of the kidnapping was to get Mackenzie to an area where prostitutes worked so as to traffick her. Respondent agrees. We agree as well.

The trial court expressly found that the crimes arose out of the same set of facts and were committed on the same occasion. These findings are supported by substantial evidence. Further, the only apparent purpose of the kidnapping was to get Mackenzie to a location where appellant could coerce her into working as a prostitute. Staying the kidnapping conviction is also consistent with the general rule that when a defendant undertakes a kidnapping for the purpose of committing sexual offenses and is punished for the sexual offenses, section 654 bars execution of the sentence on the kidnapping conviction. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1216–1217.)

2.      The Trial Court Properly Imposed Sentence on Both Counts 7 and 9.

Appellant contends section 654 bars punishment for both count 7 (child trafficking) and count 9 (witness dissuasion) because the convictions were based on the same act, appellant's threat to cut off Mackenzie's head, and the witness dissuasion was undertaken for the sole purpose of human trafficking. We do not agree. The records shows appellant made two threats and had two different objectives. Section 654 does not apply.

In closing argument, during her discussion of child trafficking, the prosecutor said she would "skip through intimidating a witness because you already heard what the defendant told her he was gonna do to her if she snitched on him." She then continued her discussion of child trafficking.

30

Later, the prosecutor returned to the charge of dissuading a witness, stating that appellant "reminded" Mackenzie of his threat when police were behind them, and instructed her to say she was his cousin.

Mackenzie's testimony showed more than a "reminder" of a previous threat; it showed appellant made two different threats. The first occurred during the drive to Pomona, when appellant told her he would cut off her head if she snitched. The second occurred after police cars pulled up behind appellant's car. Appellant told Mackenzie to say he was her cousin. Mackenzie complied because she was scared even though the police were there (and would presumably stop appellant was from hurting her) because appellant told Mackenzie "his people can come after" her if she snitched.

The record shows two different primary objectives for the two threats. The first threat was made during the child trafficking, to deter Mackenzie from texting friends or relatives for assistance and to prevent an interruption to the trafficking. The second threat was made after police had pulled up behind and were suspicious enough of appellant's and Mackenzie's activities to investigate. The trafficking had been interrupted by that point and was unlikely to resume. Appellant was concerned about being arrested, as indicated by his reference to his "people" coming after Mackenzie.[8]

Appellant's reliance on *People v. Mendoza* (1997) 59 Cal.App.4th 1333 (*Mendoza*) to show that section 654 must be applied is misplaced. In that case there was only one act to

---

[8]   We would reach the same conclusion even if appellant had simply reminded Mackenzie of his earlier threat to cut off her head. Such a reminder, in context, would be a separate act.

31

support the convictions for making a terrorist threat and dissuading a witness, and the Court of Appeal found the defendant had only one primary objective, to help his brother by preventing further testimony from the witness.[9] (*Id.* at p. 1346.) Here, there were two acts and two primary objectives. Section 654 does not apply.

### 3. The Section 667 Enhancements to Count 9 Remain.

Appellant claims that the section 667, subdivision (a)(1) enhancement terms for count 9 (witness dissuasion) must be stricken when count 9 is stayed pursuant to section 654. As we have just explained, section 654 does not require a stay. No action need be taken on the enhancements.

### 4. The Sentence on Count 2 (Lewd Act) Must Be Stayed.

Appellant contends the sentence on count 2 (lewd act) must be stayed because the jury was not instructed that the conviction should not be based on a sex act which was also used to support the count 3, 4 or 5 convictions. Appellant contends it is not

---

[9] The court found the defendant's "primary objective was to help his brother by preventing further damaging testimony from [the witness]. His objective and intent for scaring her was to dissuade her from testifying in the future. The method he employed to reach his objective was his implied threat of death or great bodily injury. Thus, his terrorist threat can only be considered incidental to his primary objective of dissuading [the witness] from testifying at his brother's upcoming trial." (*Mendoza*, *supra*, 59 Cal.App.4th at p. 1346.)

possible to know if the jury based the count 2 conviction on a separate sex act. We agree.

The only two sex acts described by Mackenzie were oral copulation and sexual intercourse. She testified to multiple acts of each occurring over a span of time. The prosecutor made no attempt in closing argument to differentiate the lewd act charge from the oral copulation charge or the sexual intercourse charge. She stated: "So I'm not gonna spend a lot of time talking about the sexual offenses— lewd act on a child age 15, oral copulation with a child under the age of 18, two counts of sexual intercourse, unlawful sexual intercourse with a child under the age of 16. We know that those things occurred. . . . We know that multiple acts of sexual intercourse, oral copulation between those two."

During deliberations, the jury sent a note to the judge asking, "[w]hy are counts 4 + 5 identical?" The court replied: "Because it is alleged the defendant at least had 2 separate incidents of sexual intercourse—up to jury to decide guilty or not guilty as to each separate act alleged." Because the jury was only presented with one count of oral copulation, the jury might reasonably have believed that only one incident/act of oral copulation had been alleged. This would leave the jury with no "extra" sex acts to use for the lewd acts count. The prosecutor apparently recognized this problem, as she stated in her sentencing memorandum that count 2 merged with count 4.[10]

---

[10] At the sentencing hearing, when defense counsel mentioned the prosecutor's suggestion that counts 2 and 4 merged, the trial court stated: "Well, this is the problem. There were different distinct acts that were alleged. They weren't distinct, distinct, but there were different allegations at different times that I think the People can make the argument that they were different acts." The prosecutor agreed with the court, but it

Accordingly, we order the sentence of one year four months on count 2 stayed pursuant to section 654.

      B.     *Appellant Has Forfeited His Claim Concerning His Ability to Pay.*

Appellant argues the trial court violated his federal and state right to due process of law by imposing a $300 restitution fee (§1202.4), a $300 parole revocation fine, stayed (§ 1202.45), a $300 sexual offender fine, a $870 penalty assessment, a $60 criminal surcharge, $280 in court security fees (§ 1465.8), and $210 in criminal conviction assessments (Gov. Code, § 70373) without determining whether he had the present ability to pay. Appellant requests we vacate the assessments and stay the imposition of the restitution fine under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).[11]

Appellant was sentenced in January 2020, a year after *Dueñas* was decided. Nevertheless, appellant did not object to the fees, assessments, or the restitution fine imposed. We find his challenge forfeited and we decline to exercise our discretion to

---

was too late for her to make that point to the jury. The times alleged covered long periods which largely overlapped. The prosecutor made no distinction among acts based on the date the acts occurred, or any other basis such as location.

[11]    The California Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47 (review granted Nov. 13, 2019, S257844) on the issue of whether a trial court must consider a defendant's ability to pay before imposing or executing fines, fees and assessments, and if so, which party bears the burden of proof on the issue.

adjudicate this forfeited issue.  (*People v. Yeoman* (2003) 31 Cal.4th 93, 117–118.)

## DISPOSITION

The sentences on counts 2 and 6 are ordered stayed pursuant to section 654.  Appellant's determinate term is thereby reduced from 10 years eight months to nine years four months. His indeterminate term of 90 years to life remains unchanged. The clerk of the superior court is instructed to prepare an amended abstract of judgment reflecting these changes and to deliver a copy to the Department of Corrections and Rehabilitation.  The judgement of conviction is affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

GRIMES, Acting, P. J.

WILEY, J.

35